## SPRAGUE *v.* GIBSON.

*(Supreme Court, General Term, Fourth Department.* February, 1892.)

1. MALICIOUS PROSECUTION—PROVINCE OF JURY.

Defendant lost money and suspected plaintiff, a carpenter in his employ, of having found or taken it. A few weeks later, plaintiff exposed large sums of money at a store, while making a purchase, which fact was communicated to defendant, who also knew that plaintiff about this time was entitled to receive a considerable sum of money on a contract. Defendant, after consulting the chief of police, procured the arrest of plaintiff, and entered his premises under a search-warrant, which revealed no evidence that plaintiff ever had possession of defendant's money, and plaintiff was discharged without incurring any expenses. *Held*, in an action for malicious prosecution, that it was not error in the court to refuse to hold, as a matter of law, that plaintiff could not recover.

2. SAME—EXCESSIVE DAMAGES.

In such case $250 damages for plaintiff is not excessive.

3. TRIAL—INSTRUCTIONS GIVEN IN ANOTHER FORM.

Where a charge to the jury, in effect, covers an instruction asked for, it is not error to refuse to repeat such instruction in the form presented by counsel.

Appeal from circuit court, Onondaga county.

Action by Henry J. Sprague against Robert L. Gibson. From a judgment entered on a verdict for plaintiff, and from an order denying a motion for a new trial made upon the minutes, defendant appeals. Affirmed.

The action was brought to recover damages for malicious prosecution, and for trespass in the execution of a search-warrant upon the person and premises of the plaintiff. Upon the trial the court granted a nonsuit as to the second count of the complaint, and the case went to the jury as an action for malicious prosecution against the defendant, for procuring and instigating, maliciously and without probable cause, a search of the plaintiff's house and person. In June, 1890, the plaintiff, being a carpenter, residing on Canon street, Syracuse, was in the employment of the defendant, a builder, who resided on Colvin street, a short distance from the plaintiff. The defendant was building a house next to his residence, and the plaintiff, as such carpenter, was working for the defendant on the house. The defendant alleged that he lost $310 in money, which had been rolled up in a piece of paper and handed to his wife, who, on Decoration Day morning, went out to a pile of kindling wood adjacent to the new house being built by the defendant, to pick up some kindling wood, with this roll of money in her dress pocket. This pile was adjacent to a side piazza underneath and around which the plaintiff was engaged that morning in putting on lattice-work. When defendant's wife missed the money, she went to this pile of kindling wood, and after a while found the piece of paper in which it had been wrapped, and the money gone. The defendant, after this piece of paper was found, went to the chief of police, having reported his loss to the plaintiff and other men who were working inside the building. Under the advice of the chief, he went to the hardware store of Merriam & Gregory, and to the lumber-yard of Mack & Dooley, where he learned that the plaintiff was trading, and reported to them his loss, and the circumstance which led him to suspect that plaintiff had found his money and intended to keep it; and he requested them to watch for him, to see if the plaintiff disposed of any considerable sums of money

when he should come to pay his bills. Some two weeks thereafter, to-wit, on the 15th of June, the defendant received a message to come to the store of Merriam & McGregory. He there learned that the plaintiff had been in the store, and traded to the amount of $11, and that, when he went to the desk to pay his bill, he produced $20 to pay the bill, and the book-keeper inquired if he had nothing smaller. The plaintiff then put his hand in his pocket and drew out a roll of bills, saying he had considerable more. Thereupon the book-keeper sent a messenger after the defendant, who went to the store and received the information from the book-keeper. Thereafter the defendant went to the house of the police justice, accompanied by the book-keeper, and stated the facts and circumstances, and made an affidavit and procured a warrant, and also a search-warrant; and defendant took the warrants, and delivered them to the police officers. The defendant knew of a contract held by the plaintiff for the building of a house on Midland avenue, a short distance from the residence of the parties. The defendant knew of this contract, and knew that upon the 15th of June, upon the foundation being up, the plaintiff was entitled to $200 on the contract; and there is some evidence that the defendant knew that the plaintiff had money, as he had from time to time changed money for the defendant previous to that time. The police officers, on receiving the warrants, went to the plaintiff's premises, and the plaintiff claims he was arrested on one of the warrants after being informed by the officers of the warrants. A search was made of the person of the plaintiff, and of the different rooms on the premises occupied by him. The plaintiff explained to the officers as to all the money he had, and the money he had received on the Hickman contract; and the defendant was sent for, and shown the Hickman contract, and the search was discontinued; and on the following Monday morning the plaintiff went to the police officers, where the warrants were lodged, and was discharged. Nothing was found under the search-warrant, and no evidence was given that the plaintiff ever had possession of the defendant's money.

Argued before HARDIN, P. J., and MARTIN and MERWIN, JJ.

T. K. Fuller, for appellant. Ceylon H. Lewis, for respondent.

HARDIN, P. J. In Carl v. Ayers, 53 N. Y. 17, ANDREWS, J., said: "Probable cause, which will justify a criminal accusation, is defined to be a reasonable ground of suspicion, supported by circumstances sufficiently strong in themselves to warrant a cautious man in his belief that the person accused is guilty of the offense with which he is charged. * * * Public policy requires that a person shall be protected who, in good faith and upon reasonable grounds, causes an arrest upon a criminal charge; and the law will not subject him to liability therefor. But a groundless suspicion, unwarranted by the conduct of the accused, or by facts known to the accuser, when the accusation is made, will not exempt the latter from liability to an innocent person for damages for causing his arrest. A man has no right to put the criminal law in motion against another, and deprive him of his liberty, upon mere conjecture that he has been guilty of the crime. He cannot be allowed to put a false and unreasonable construction on the conduct of another, and then justify himself for causing an arrest by claiming that he acted upon appearances." Applying that rule to the facts of the case as they were delivered upon the trial now brought in review, we are of the opinion that the circuit judge properly refused to hold, as a matter of law, that the plaintiff could not recover, and we are of the opinion that the case was a proper one for the jury. The doctrine of the case from which we have quoted was followed in Hazzard v. Flury, 120 N. Y. 223, 24 N. E. Rep. 194.

2. In the course of the charge the judge instructed the jury that, in case they find the plaintiff "is entitled to recover at all, he is entitled to his compensatory or actual damages anyhow. * * * There is not in this case, as

frequently there is in cases, money paid out for counsel, in order to relieve plaintiff from the prosecution. There was no trial, no counsel employed, as you will recollect; but while the search was going on, upon talk and consultation, it was stopped, and that was the end of it. There was no counsel called upon to aid in the proceedings, so there was no money paid out for counsel fees. The plaintiff is entitled to recover such amount as would fairly compensate him—if he is entitled to damages at all—for the injury to his character, the indignity to his feelings, and the disgrace naturally attendant upon this prosecution. That is about all I can say to you upon this subject. There is no established rule by which to measure those things. They are left to the discretion of the jury." It is now insisted by the learned counsel for the appellant that error was committed by the trial judge in refusing "to say to the jury that there is no proof in this case of any actual damages." An exception was taken to such refusal. We think the charge, as delivered, in effect covered the question raised by the request, and that the judge was not called upon to repeat in answer to the request. The charge, as delivered, was very full and careful, and there is no exception thereto which presents any error. We think no error was committed in any refusals that were made to the requests propounded by the defendant. Appellant calls our atttention to *Turner* v. *Dinnegar*, 20 Hun, 466. We find nothing in that case contrary to the principles laid down by the trial judge in his charge.

3. In the course of the cross-examination of the chief of police, he stated that he remembered the defendant coming to him, and stating his loss of $310, some two weeks before the warrants were issued. At folio 46, witness testified: "I don't recollect positively giving him any advice about getting a warrant." He next answered: "The best of my recollection would be, I did advise it." He next testified: "I don't remember of it." He was then admonished by the court: "You should not state it, then." Thereupon the witness says: "I don't remember advising him. There are so many of those cases—I don't remember—it is a hard matter. * * * I don't remember any particular one, so as to be able to give it distinctly, unless there is something about it which calls my attention especially to it." If the intimations of the trial judge in the early part of the cross-examination were too stringent, we think, before the cross-examination terminated, the defendant obtained all the evidence which the witness could give upon the questions in issue. We therefore think the language of Judge BOCKES in *Johnson* v. *Comstock*, 14 Hun, 243, is applicable, where he says: "It is true, as a general proposition, that a party is entitled to have his case tried upon an entirely correct theory of law; but when it appears well determined, on an application of sound principles, erroneous rulings, which do not and cannot affect the merits, constitute no ground of error."

4. We are of the opinion that the damages are not excessive, and the trial judge properly refused to set aside the verdict. *Johnson* v. *Comstock*, 14 Hun, *supra.* Judgment and order affirmed, with costs.

MARTIN, J., concurs.    MERWIN, J., concurs in result.